UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

21ST CENTURY CENTENNIAL INSURANCE
COMPANY, *et al.*,

      Plaintiffs,

  v.

UNITED STATES OF AMERICA, *et al*.,

      Defendants,

ROBERT ADAMS, *et al.*,

      Plaintiffs,

  v.

UNITED STATES OF AMERICA, *et al*.,

      Defendants,

KEVIN ALLARD, *et al.*,

      Plaintiffs,

  v.

UNITED STATES, *et al.*,

      Defendants,

GIUSTINA LAND & TIMBER CO., LLC, *et al.*

      Plaintiffs,

  v.

EUGENE WATER & ELECTRIC BOARD, *et al.*,

      Defendants,

Case No. 6:24-cv-00089-MTK (Lead Case)

Case No. 6:24-cv-00092-MTK (Trailing Case)

Case No. 6:24-cv-00203-MTK (Trailing Case)

Case No. 6:24-cv-01152-MTK **(**Trailing case)

TRACI ENFIELD, *et al.*,

      Plaintiffs,

  v.

UNITED STATES, *et al.*,

      Defendants.

Case No. 6:25-cv-00554-MTK (Trailing case)

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Before the Court are the Non-BPA Parties' Motion to Compel and for Sanctions (ECF No. 168) and Eugene Water and Electric Board's Motion to Compel and for Sanctions (ECF No. 181). For the reasons discussed below, the Non-BPA Parties' motion is GRANTED IN PART and Eugene Water and Electric Board's motion is GRANTED.

## BACKGROUND

The parties are familiar with the factual background of these consolidated cases as stated in the Court's recent Opinion and Order. ECF No. 194. The Court incorporates the facts from that Opinion and supplements them here as relevant.

## I.    The Fire and BPA's Preservation of Evidence

On September 7, 2020, trees fell on transmission lines operated by the Bonneville Power Administration ("BPA") igniting ground vegetation and merging with another fire to become the Holiday Farm Fire, which caused widespread destruction in Lane County. Op. & Order 2-3, ECF No. 194. On September 8, 2020, the United States Forest Service assembled a team to investigate the origin and cause of the fire. Klingbeil Decl. Supp. Non-BPA Parties' Mot. Compel Produc. and Sanctions ("Klingbeil Decl.") Ex. 3 ("USFS Report") 3, ECF No. 169. The next day, on September 9, 2020, a BPA supervisor asked to be notified "[i]f any fire ignition investigations are taking place" around BPA transmission lines so BPA could "keep [its] crews out of that area

until the investigation is over." Curtis Aff. Supp. Pls.' Opp. United States' Mot. Dismiss ("Curtis Aff.") Ex. W ("Cathcart Dep.") Ex. 11, ECF No. 161-23.

On September 12, 2020, a BPA official had drafted guidance to BPA crews responding to the fire's impact to BPA's transmission lines, stating "there is a significant liability concern for BPA if any of our actions or equipment can be associated with the cause of any of these devastating fires" and that BPA would "retain[] the services of a forensic fire investigator . . . to collect and analyze relevant evidence associated with any of the events that could have been caused by BPA actions for [*sic*] equipment." Cathcart Dep. Ex. 13. That day or the following day, the U.S. Forest Service sent a formal preservation notice to BPA, requesting that "[BPA] and [its] agents preserve all evidence, including but not limited to physical evidence, photographs, records, communications, and documents, in your possession related to the Holiday Farm Fire" and citing BPA's duty to "preserve all evidence that may be relevant to any potential litigation arising from or relating to the Holiday Farm Fire." Epley Decl. Supp. Non-BPA Parties' Mot. Compel Produc. and Sanctions ("Epley Decl.") Ex. A ("USFS Preservation Notice") 1-2, ECF No. 171 (showing a date of September 12, 2020); *see also* USFS Report 10-12 (stating the Forest Service sent BPA a preservation notice on September 13, 2020).

On September 13, 2020, a U.S. Forest Service investigator arrived at the ignition site. USFS Report 10-11. The site was within BPA's right of way in Willamette National Forest where BPA "construct[s] and maintain[s] [its] transmission system." Curtis Aff.  Ex. Y ("Sheppard Dep.") 52:14-53:17, ECF No. 161-25. When the investigator arrived, BPA crews were working in the area. USFS Report 10-11. The investigator observed two green fir trees laying in the power line corridor that had been "cut into pieces and pushed to both sides of the corridor with heavy equipment." USFS Report 11.

Forest Service investigators did not return to the ignition site until September 17, 2020. USFS Report 11-14. They observed a large tree, Tree #1, lying on top of a section of transmission line and a second tree "that appeared to have fallen on the line as well but was subsequently cut out by BPA ground crews and moved by machine to the north side of [a] clearing." USFS Report 14. The team identified three trees as "associated with the transmission line coming down." USFS Report 14. While the team was investigating, a BPA official and private engineering consultant, Michael Fitz, arrived and asked the team when BPA could remove the hazards from the area. USFS Report 14-15. Fitz attempted to take photos of the surrounding area, but the lead Forest Service investigator, Agent McIntyre, requested that he return after the team finished its investigation. USFS Report 15. The next day, the team returned to the ignition site to conduct a FARO scan of the area but had to postpone the scan until September 20 due to heavy rainfall. USFS Report 15.

On September 20, investigators returned to the site:

> Upon driving up to the location [Agent] McIntyre observed that the tree that was laying on the transmission line had been moved. On closer inspection, McIntyre observed the general and specific origin areas had been driven through with heavy machinery and moved the tree that had been on top of the transmission line. Further, [he] observed that the transmission line and several locations that [*sic*] had been spray painted and labeled with tags identifying "MMFITZ" and measurements associated with the length of the transmission line . . . . In looking through the pile of limbs and tree where Tree #1 was identified, [Agent] McIntyre located a limb with a transmission line mark on it. This limb was located near the powerline and must have been turned over during the movement of the tree. It appears that its original position was under the tree as it wasn't seen by the investigation team before the tree had been moved. [Agent] McIntyre collected the limb identifying it as evidence BPA 00E.
>
> [Agent] McIntyre made the decision to forgo the FARO scan at [the] origin site . . . . The site had changed significantly, specifically the movement of tree #1 by unauthorized persons which the investigation team believes is the tree that brought the transmission line to the ground.

USFS Report 15-16. On September 22, investigators met with a BPA foreman that had been tasked with "cutting the section of transmission line that was laying within the specific origin

area of site #2 and to collect additional infrastructure parts that had already been removed and stored in a flat area near the Blue River Tap." USFS Report 16.

At some point "within a couple of weeks" of the fire but possibly "sooner than that," BPA's general counsel's office sent a notice of potential litigation against BPA arising from the Holiday Farm Fire. Cathcart Dep. 35:23-38:7. BPA contracts with third parties to remove dangerous trees and manage vegetation. Sheppard Dep. 38:4-39:4. These third-party contractors produced no preservation notices in response to discovery requests in this case. Epley Decl. ¶ 6. At least one BPA contractor stated without such a notice, emails related to the Holiday Farm Fire would have been automatically deleted. Epley Decl. Ex. E 2.

## II.    Procedural History

The Adams Plaintiffs, Subrogation Plaintiffs, Allard Plaintiffs, Cross-Claimant Eugene Electric and Water Board ("EWEB"), and Cross-Claimant Lane Electric Cooperative, Inc. ("LEC") (collectively, "Non-BPA Parties") bring tort claims against the United States though BPA.[1] On August 2, 2024, the United States moved to dismiss all claims against it for lack of jurisdiction, arguing that all claims were barred by the discretionary function exception to the Federal Tort Claims Act. ECF No. 84. The Court allowed the Non-BPA Parties to seek jurisdictional discovery from BPA and merits discovery from non-parties, including the United States Forest Service. ECF Nos. 93, 121, 124.

Thereafter, the parties engaged in several discovery disputes. *See, e.g.*, ECF Nos. 121, 124 (resolving dispute over proposed discovery plan); Order, ECF No. 145 (resolving dispute over whether proposed topics for a 30(b)(6) deposition were within the scope of jurisdictional

---

[1] The Court fully described each party and their claims in its previous order denying in part the United States' motion to dismiss. ECF No. 194.

discovery). On July 30, 2025, the Court ordered the Non-BPA Parties to file a formal motion raising issues related to compelling discovery from BPA, the alleged spoliation of evidence, and requests for sanctions. Order, ECF No. 162. Thereafter, the Non-BPA Parties filed the first motion now before the Court seeking an order (1) sanctioning the United States for BPA's failure to produce a prepared 30(b)(6) deponent, (2) sanctioning the United States for BPA's spoliation of physical evidence and electronically stored information, and (3) compelling BPA to provide access to a software portal that visualizes LiDAR data ("LiDAR Portal"). Non-BPA Parties' Mot. Compel Prod. and Sanctions, EFCF No. 168.

The Court heard oral argument on the Non-BPA Parties' Motion and the United States' Motion to Dismiss on October 8, 2025. ECF No. 175. In that hearing, the Court also heard arguments on a discovery dispute related to merits discovery involving evidence in the U.S. Forest Service's possession. Oral Argument Tr. 1945-205, ECF No. 186. Following the hearing, EWEB filed a motion to compel requesting that the Court (1) find the United States waived its objections to EWEB's requests for production from the Forest Service, (2) compel the United States to review Forest Service ESI for responsiveness, (3) compel the United States to produce all responsive Forest Service documents, (4) compel the United States to produce a privilege log for withheld Forest Service documents if the Court finds the privilege is not waived, (5) compel the United States to make Forest Service witnesses available for depositions, and (6) award the Non-BPA Parties their costs and fees associated with the United States' discovery violations. EWEB's Mot. Compel USFS Discover and Sanctions, ECF No. 181.

On February 11, 2026, the Court denied the United States' Motion to Dismiss with respect to the claims that BPA failed to properly manage vegetation near its power lines. Op. & Order, ECF No. 194.

**STANDARDS**

It is well established that "a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *United States v. W.R. Grace*, 526 F.3d 499, 508-09 (9th Cir. 2008). The Court has discretion to permit or deny discovery, including jurisdictional discovery. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). The court has discretion to sanction a party for failing to comply with its discovery orders or in response to a party's abusive litigation practice. *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976); *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348-49 (9th Cir. 1995).

"[W]hen the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant." *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991).

**DISCUSSION**

**I.    Non-BPA Parties' Motion**

**A.    Sanctions for the Rule 30(b)(6) Deposition**

The Non-BPA Parties move for sanctions against the United States for failing to prepare BPA's Rule 30(b)(6) designee ("Designee Cathcart") for her deposition. A Rule 30(b)(6) designee is a person designated by an organization to testify on its behalf. Fed. R. Civ. P. 30(b)(6).

A court's authority to sanction a party for its conduct in discovery is derived from two sources: "[T]he inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to

obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation and internal quotations omitted). Sanctions are available under a court's inherent authority when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Id.* (citation omitted).

Under the Federal Rules of Civil Procedure, a party may seek the deposition of a designated officer of an organization who "must testify about information known or reasonably available to the organization" relevant to properly noticed topics. Fed. R. Civ. P. 30(b)(6). If that witness fails to appear, the party may be sanctioned under Rule 37(d). Fed. R. Civ. P. 37(d)(1)(A)(i). A failure to appear is construed strictly, meaning the witness must literally fail to show up for the deposition. *Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995) (holding the deponent's refusal to testify was not a failure to appear). Here, Designee Cathcart attended her deposition and answered questions. Sanctions under Rule 37(d) are unavailable.

The court may sanction a party for failing to prepare the deponent where the failure to prepare defies a court's order permitting discovery. Fed. R. Civ. P. 37(b)(2)(A). That sanction is generally unavailable where there is no court order directing the party to produce certain discovery. *See Unigard Sec. Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 367-68 (9th Cir. 1992). Sanctions under 37(b)(2) are inapplicable here because the Court did not compel the discovery sought. *See id.* at 368 ("Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse.").

Under the court's inherent authority, it may also sanction a party for its failure to prepare its 30(b)(6) deponent that "abuses the judicial process." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). The court may sanction a party by compelling it to produce a properly prepared designee for a second deposition and requiring the party failing to prepare the deponent

to pay attorney's fees associated with the failed deposition. *See Goodyear Tire & Rubber Co. v. Hager*, 581 U.S. 101, 107-08 (2017) (citing federal courts' "inherent powers . . . to fashion an appropriate sanction for conduct which abuses the judicial process") (citation omitted).

In this case, Designee Cathcart did not know or was not aware of the answers to 122 deposition questions. Klingbeil Decl. Ex. 7. Many questions asked were squarely within the topics in the deposition notice. Klingbeil Decl. Exs. 6, 7.

For example, the deposition notice listed the topic "[s]teps BPA took to preserve documents and other evidence relevant to the 2020 Holiday Farm Fire." Klingbeil Decl. Ex. 6 at 9. Cathcart testified that she did not review a BPA litigation notice to employees or a BPA email discussing investigations into BPA's involvement of the fire, but that BPA's general counsel office generally issues preservation notices. Cathcart Dep. 26:20-27:2, 37:14-19, 40:5-25, Ex. 11. She stated that did not know, among other things, what steps BPA officials took to preserve evidence on September 9, 2020, or in response to learning of the Forest Service investigation, which BPA employees were put on notice to preserve evidence, whether BPA notified its contractors in the area of a duty to preserve, whether BPA sent a final version of draft guidance to preserve evidence to crews, whether, when, or where trees at the fire sight were moved, preserved, or disturbed, or what evidence BPA turned over to the Forest Service. Cathcart Dep. 45:4-16, 55:9-58:2, 61:4-21, 66:8-13, 68:2-18, 70:18-24, 73:7-20, 74:6-13, 76:14-77:10, 79:12-16, 87:2-13, 91:10-14, 93:11-16.

The deposition notice also listed "BPA's general policies, practices, and procedures related to preserving documents and other evidence when on notice of a potential civil litigation, or criminal or regulatory investigation." Klingbeil Decl. Ex. 6 at 9. Designee Cathcart stated that she did not know whether BPA's litigation hold policy changed after the Holiday Farm Fire, how

BPA determines when to preserve records in anticipation of litigation, whether its policies create duties to preserve evidence before its general counsel issues a hold, whether BPA's preservation policy applies to outside contractors, whether BPA's contractors must certify they complied with the policy, or whether BPA checks that is contractors are preserving evidence. Cathcart Dep. 20:11-21:5, 21:17-20, 24:14-24, 25:7-12, 29:16-30:4.

At the conclusion of her deposition, the counsel for the United States asked Designee Cathcart about her inability to answer the Non-BPA Parties' questions:

> Q      When you said "I don't know," were you referring to yourself and the preparation that you did for the deposition today, or were you referring to BPA as an agency?
>
> A      I was referring to myself personally not knowing.

Cathcart Dep. 96:3-11.

In short, the Designee was simply unable to answer questions within the scope of topics approved by the Court before her deposition. The United States, responding to the Non-BPA Parties, states that the deposition topics were not sufficiently specific and outside the scope of jurisdictional discovery. In doing so, the United States raises an argument already rejected by this Court. Order, ECF No. 145; Order ECF No. 150 (stating that deposition topics were "relevant and proportional to the needs of the case" and within the scope of jurisdictional discovery). Once the Court rejected those arguments, the United States had notice that BPA's preservation practices, generally and with respect to the Holiday Farm Fire, would be examined. Notwithstanding the Court's orders, the United States continued to object on the same grounds. *E.g.*, Cathcart Dep. 66:14-17. The United States' failure to adequately prepare BPA's 30(b)(6) designee is fundamentally motivated by its disagreement with this Court's discovery orders. Sanctions are appropriate under the Court's inherent authority because the United States' failure

to prepare its witnesses on grounds rejected by a Court order is abuse of the judicial process, and this Court will not tolerate such insolence.

The United States shall produce a second Rule 30(b)(6) deponent for deposition on all topics noticed to its previous designee within 30 days of this Order. The United States shall pay all costs and attorney's fees associated with the first deposition, the deposition ordered above, and the portion of the Non-BPA Parties' motion seeking sanctions for BPA's failure to prepare its 30(b)(6) designee.

###    B.    Sanctions for the Spoliation of Evidence

A litigant is generally under a duty to preserve evidence that they know or should know is relevant to any claim or anticipated claim. *Campanile v. Daimler N. Am. Corp.*, No. 18-01716, 2024 WL 5011094, at *3 (D. Or. Oct. 1, 2024) (citing cases); *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (defining spoliation as the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation") (citation omitted); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (stating the duty to preserve evidence reaches "reasonably foreseeable litigation") (citation omitted). District Courts in the Ninth Circuit generally apply a preponderance of the evidence standard of proof to spoliation motions. *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (citing cases).

The record shows that BPA anticipated investigations examining the involvement of its equipment in the fire area as early as September 9, 2020, and specifically noted the need to "keep [its] crews out of that area until the investigation is over." Cathcart Dep. Ex. 11. By September 12, a BPA official thought it was important for crews "to know that if they find a tree caused outage that resulted in a fire, there is likely going to be an investigation of that specific event to ensure we have the right amount of information needed to learn about and limit BPA's liability

risk." Cathcart Dep. Ex. 11. The United States Forest Service began its investigation into the cause of the fire on September 9, 2020, and sent BPA a preservation notice on September 12 or 13, 2020, because BPA maintained the infrastructure at the ignition site. USFS Report 1, 11-12; Cathcart Dep. Ex. 12. BPA acknowledged the "significant liability concern[s]" that evidence that its equipment was involved in the fire would pose. Cathcart Dep. Ex. 13.

On these facts, BPA should have known that litigation over its involvement in the fire was reasonably foreseeable on September 9, 2020. BPA itself acknowledged the need to preserve evidence by keeping its crews outside of investigative areas until the investigation concludes. BPA stated that telling its crews to stay out of the area is generally how it takes steps to maintain evidence in anticipation of litigation. Cathcart Dep. 42:22-43:6. BPA therefore had a duty to preserve evidence on September 9, 2020.[2]

The Non-BPA Parties allege that the United States, through BPA, failed to preserve (1) physical evidence from the site of the fire and (2) electronically stored information ("ESI") in the form of emails of its own staff and its contractors. The Court addresses each in turn.

1.    Physical Evidence

A court may sanction willful spoliation of physical evidence under its inherent authority. *See Leon*, 464 F.3d at 958. With respect to physical evidence, "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the [evidence was] *potentially* relevant to the litigation before [it was] destroyed." *Id.* at 959 (citation omitted). In considering severe sanctions, the Court may consider the fault of the party destroying the

---

[2] Even if BPA was somehow unaware of the risk of litigation on September 9, BPA's own statements on September 12 establish its awareness of the "significant liability concern[s]" caused by the fire.

evidence, the prejudice to the other party, and the availability of lesser sanctions. *See Anheuser-Busch*, 69 F.3d at 348.

Despite the duty to preserve evidence, BPA did not preserve the ignition site within its right of way. When U.S. Forest Service officials arrived at the site on September 13, trees in BPA's power line corridor had already been moved and cut up. By September 17, 2020, after BPA officials had spoken with Forest Service officials, BPA had moved trees that had appeared to have fallen on the transmission line. By September 20, the "general and specific origin areas had been driven through with heavy machinery" and the tree that U.S. Forest Service investigators believed had brought BPA's transmission line to the ground had been moved. USFS Report 15. Citing the state of the ignition site, the Forest Service decided to forego a FARO scan. After the fire, BPA hired contractors to "cut down every tree tall enough to hit the transmission line in a 25-foot area outside the normal BPA right-of-way. . . . regardless of their health or previous fire damage." *See* Franklin Decl. Supp. Def. Lane Electric Cooperative Inc.'s Resp. United States' Mot. Dismiss ¶¶ 5, 6, 12, ECF No. 154.

The United States offers no evidence of BPA's preservation efforts in response to the Non-BPA Parties' Motion. The United States instead argues that the Non-BPA Parties' discovery into BPA's preservation efforts fell outside the scope of jurisdictional discovery, and therefore, sanctions are not warranted. As discussed above, the Court already rejected the United States' position on that issue. Regardless, the objection does not relieve the United States of BPA's duty to preserve evidence. The record contains substantial evidence to show that BPA failed to preserve the fire's ignition site and instructed its contractors to clear trees in a 25-foot area outside its right-of-way without regard to the tree's health or previous fire damage. The record also supports a finding that BPA had control over the ignition site in its right of way,

moved trees at the ignition site, and that its engineering consultant did work in the area while BPA was aware of the Forest Service's investigation.

BPA's failure to preserve evidence has caused substantial prejudice to the Non-BPA Parties. At the outset, the U.S. Forest Service was unable to investigate all the evidence available at the ignition site in its original post-fire condition. Nor did BPA keep the ignition site secure through the duration of the Forest Service's investigation; personnel not authorized by the investigative team drove through the site with heavy machinery and moved trees suspected of bringing down BPA's transmission line. USFS Report 15-16. The material disturbance of the ignition site also prevented the Forest Service from conducting a forensic FARO scan of the area, preventing a "digital spatial documentation" of the area. *See* USFS Report 11.

BPA willfully spoiled evidence because it moved trees of interest and allowed its contractors to materially disturb the ignition site without preserving evidence it knew it should, and could, preserve in reasonable anticipation of litigation. The prejudice to the Non-BPA Parties is substantial. The Non-BPA Parties must now rely on a Forest Service investigation of an ignition site that was neither preserved in its original state nor maintained throughout the investigation. The Non-BPA Parties do not have access to a FARO scan documenting the ignition site because of destruction of the original site and changes to the site after the Forest Service began its investigation. Considering the significance of the lost evidence to the Non-BPA Parties, an award of fees alone would be insufficient to remedy the spoliation. An adverse inference balances the need to deny BPA the fruits of its failure to preserve evidence with its right to produce other relevant evidence. *See In re Oracle Corp Sec. Lit.*, 627 F.3d 376, 386-87 (9th Cir. 2010).

The Court orders that any inferences to be drawn from the destroyed physical evidence shall be construed against the United States and that the United States may not argue that the lost physical evidence works against the Non-BPA Parties. The Court further awards the Non-BPA Parties their reasonable attorney's fees and costs associated with its motion for sanctions relating to spoliation of physical evidence, to wit, the ignition site.

   2. <u>ESI</u>

Sanctions are available under Rule 37(e) when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If the moving party proves those elements, two categories of sanctions are available:

> First, where the district court finds that the loss of information has prejudiced the moving party, the district court may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Second, where the district court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the district court may require an adverse evidentiary presumption, dismiss the case, or enter default judgment. Fed. R. Civ. P. 37(e)(2).

*Newberry v. County of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018); *see also Jones v. Riot Hosp. Grp.*, 95 F.4th 730, 734-35 (9th Cir. 2024). To levy sanctions under Rule 37(e)(2), the court must find that the party who failed to preserve evidence acted with the specific intent to willfully destroy evidence "with the purpose of avoiding its discovery by an adverse party." *Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024) (citation omitted). Gross negligence and recklessness are insufficient to warrant an adverse evidentiary presumption, dismissal, or default judgment. *Id.*; *Jones*, 95 F.4th at 735. The required intent may be shown by circumstantial evidence, including a failure to explain the destruction, "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Jones*, 95 F.4th at 735.

Ninth Circuit courts find the requisite intent where it is reasonable to infer that a party failed to preserve evidence relevant to a reasonably foreseeable claim. *Est. Bosco v. County of Sonoma*, 640 F. Supp. 3d 915, 927-28 (N.D. Cal. 2022); *cf. United States v. Kitsap Phys. Serv.*, 314 F.3d 995, 1001-02 (9th Cir. 2002).

Here, BPA failed to notify its contractors of a litigation hold, resulting in the loss of emails associated with at least one contractor. BPA was aware of its duty to preserve evidence two days after the fire but took its time issuing a litigation hold "within a couple of weeks" of the fire. Cathcart Dep. 35:23-38:7. BPA's 30(b)(6) designee did not know which BPA staff received a notice to preserve emails. *See supra* I.A. Those emails are relevant to the Non-BPA Parties' claims as BPA relied on its contractors to conduct its vegetation management in the Holiday Farm Fire area. The United States points to no evidence comparable to the lost emails in response to the Non-BPA Parties' motion.

The United States does not counter the motion with evidence that BPA's failure to notify contractors was done in good faith. Designee Cathcart offered no explanation for BPA's failure to notify its contractors or any statement that BPA took actual steps to direct them to preserve evidence. *See supra* I.A. BPA was aware of its duty to preserve evidence two days after the fire but only issued a litigation hold "within a couple of weeks" of the fire to an unknown number of employees. Cathcart Dep. 35:23-38:7, 64:12-66:13. BPA's 30(b)(6) designee did not know whether BPA issued final preservation guidance to its patrol crews. *See supra* I.A. During this same period, BPA failed to preserve the ignition site while the Forest Service attempted to complete its investigation. BPA offers no explanation for its failures to preserve electronically stored information it knew was relevant to reasonably foreseeable litigation. Its complete failure to offer any explanation, and its general recalcitrance in complying with this Court's discovery

management orders, taken as whole, lead the Court to conclude BPA's conduct is in bad faith and the spoliation of critical evidence is willful.

When intent is found, no further finding of prejudice to the party deprived of the information is required. Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. The Court nevertheless finds that the Non-BPA Parties were prejudiced by the loss of the emails because BPA's use of contractors to manage its vegetation directly relates to the Non-BPA Parties' claims, and the United States points to no comparable evidence. The Non-BPA Parties are entitled to their costs and fees associated with moving for sanction due to loss of ESI under Federal Rule of Civil Procedure 37(e)(1).

More severe sanctions under Rule 37(e)(2) are appropriate as well because the United States acted with the intent to deprive the Non-BPA Parties of evidence relevant to their claims. Any inferences to be drawn from the destroyed ESI shall be construed against the United States and the United States may not argue that the lost ESI works against the Non-BPA Parties.

### C.    Compelling Access to the LiDAR Portal

Prior to the Court's resolution of the United States' motions to dismiss, the Non-BPA Parties sought access to BPA's LiDAR portal for jurisdictional discovery via the Court's informal discovery dispute protocol. *See* Case Management Order 2, ECF No. 4 The Court authorized formal briefing, and the Non-BPA Parties moved to compel access to the LiDAR Portal. *See* Order, ECF No. 162. Discovery against BPA is no longer limited to jurisdictional issues because the Court denied the United States' motions. The Court must still analyze the non-BPA's motion to compel under jurisdictional discovery to assess whether the Non-BPA Parties are entitled to attorney's fees under Rule 37. *See Balla v. Idaho*, 677 F.3d 910, 920 (9th Cir. 2012) (stating that Rule 37(a)(5)(A) generally requires the court to award attorney's fees where discovery may be provided after a motion to compel was filed even though there would be no

court order compelling discovery); Fed. R. Civ. P. 37(a)(5)(A) (stating fees must be awarded unless the movant filed the motion without conferring, the opposing party's objection was substantially justified, or other circumstances make an award of expenses unjust). The Court's prior Opinion (ECF No. 194) finding its jurisdiction does not moot the issue because subject-matter jurisdiction is always a live issue in federal court. *E.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011) (stating that "federal courts have an independent obligation to ensure" their jurisdiction and that party may object to subject matter jurisdiction at any time).

To the extent the United States argues the motion to compel is untimely under the Court's Scheduling Order, ECF No. 114, the Court finds good cause to excuse the delay. The Non-BPA Parties were not aware of the benefit of the LiDAR portal until they deposed BPA officials familiar with the system on June 23, 2025. Sheppard Dep. 87:15-90:24. They utilized this Court's informal discovery dispute process to seek the information on July 9, 2025.

      1.   <u>Standards</u>

A court may exercise its discretion to grant jurisdictional discovery "where a more satisfactory showing of the facts" bearing on jurisdiction is necessary or where those facts are contested. *Boschetto*, 539 F.3d at 1020. Although jurisdictional discovery may be denied when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," it should be granted when it would be useful to resolve disputed facts that establish the Court's jurisdiction. *Laub v. U.S. Dep't Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation omitted). In the context of the jurisdictional issue raised in this case, the discretionary function exception, if discovery would make no difference to the jurisdictional analysis, it may be denied. *Esquivel v. United States*, 21 F.4th 565, 578-79 (9th Cir. 2021). In resolving a dispute over the scope of jurisdictional discovery in this case, this Court initially assessed whether the

proposed discovery was "relevant and proportional to the needs of the case." Order, ECF No. 150 (citing Fed. R. Civ. P. 26(b)(1)).

The United States argues that this Court should assess LiDAR access under Federal Rule of Civil Procedure 56(d) instead of Rule 26(b) and that access to LiDAR software had no bearing on the jurisdictional question before the Court. In support for its contention, the United States cites to several district court cases wherein Rule 56(d) is applied. *Freres Timber, Inc. v. United States*, 739 F. Supp. 3d 840, 843-44 (D. Or. 2024), *aff'd*, No. 25-7736, 2026 WL 352641 (9th Cir. Feb. 9, 2026) (mem. op.); *Gonzalez v. United States*, No. 12-00375, 2013 WL 308762, at *7 (D. Ariz. Jan. 25, 2013).

The Ninth Circuit, however, when reviewing these courts' decisions for abuse of discretion and then affirming, focused its reasoning on whether the additional discovery would "bear[ ] on the question of jurisdiction." *Freres Timber, Inc.*, No. 24-7736, 2026 WL 352641, at *2 (9th Cir. Feb. 9, 2026) (mem. op.) (citing *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864-65 (9th Cir. 2022); *see Gonzalez v. United States*, 814 F.3d 1022, 1031-32 (9th Cir. 2016). That is the standard this Court applies.

### 2.    Whether the Information Sought Weighs on Jurisdiction

The Non-BPA Parties advance several arguments on why access to the LiDAR portal was necessary. They argue that the LiDAR portal "[is] central to determining what BPA knew or should have known" about hazardous trees near its line. Non-BPA Parties Mot. 23. This argument is directed at merits discovery. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989) ("[N]egligence is simply irrelevant to the discretionary function inquiry."). They also argue, and the record supports, that BPA regularly relies on the LiDAR portal to carry out scheduled vegetation maintenance. BPA uses its LiDAR portal in managing the vegetation around its power lines "in conjunction with [its] maintenance schedule . . .

roughly, every three to four years" to help identify trees that need to be trimmed or removed. Sheppard Dep. 87:10-88:10. The system can identify a tree's height and location more accurately than a crew inspecting trees without LiDAR. Sheppard Dep. 131:14-18. LiDAR also "identifies those clearance conditions within the right-of-way that have potential to exceed our action thresholds that need to be corrected ahead of the maintenance time." Sheppard Dep. 88:1-6. This information would address whether BPA acted properly with respect to the trees near its transmission lines. Whether the United States made the proper choice is not relevant to the discretionary function exception. *Esquivel*, 21 F.4th at 578-79.

The Non-BPA Parties contend that the LiDAR portal would help them understand the basis for BPA's vegetation management decisions, but they fail to show how the LiDAR portal would speak to the issue of whether BPA acted with discretion in managing vegetation. The Non-BPA Parties are not entitled to their fees associated with the motion to compel access to the LiDAR portal because the discovery sought sounds in negligence rather than the discretionary function exception. Based on the record and the arguments currently presented, the Court concludes the discovery does not bear on the question of jurisdiction. However, the Court adheres to its understanding that the LiDAR evidence remains relevant and proportional with respect to the merits case. The Court cautions the United States on opposing production of this evidence unless it intends to present arguments opposing such production that present substantial merit.

/ / /

/ / /

/ / /

/ / /

II.     **EWEB's Motion**

    A.     **Waiver of Objections to EWEB's Requests for Production**

A party must respond or object to requests for production ("RFPs") in writing.[3] Fed. R.

Civ. P. 34(2)(A). Failure to object within thirty days of service or a time otherwise agreed upon

by the parties waives all objections. L-R 26-5(a); *Richmark v. Corp. v. Timber Falling*

*Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). This waiver reaches untimely objections that

the information is privileged. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (stating

that the Fifth Amendment privilege can be waived by failing to respond to interrogatories). The

court may excuse the failure to object timely if the party failing to object has good cause for the

delay. *Id.*

EWEB served its first RFPs to the United States Forest Service on November 18, 2024.

Monson Decl. Supp. Def. Eugene Water and Elec. Bd.'s Mot. Compel ("Monson Decl.") ¶ 2, Ex.

A, ECF No. 182. The Forest Service did respond to the RFPs by December 18, 2024. Monson

Decl. ¶ 3. By its own admission, the United States did not timely object to EWEB's RFPs.

United States' Resp. Second Mot. Compel Discovery ("United States' 2d Resp.") 5, ECF No.

191 ("It's true . . . that the United States served its written responses and objections to the

requests for production late."). The United States did not raise any objection until January 8,

2025. Monson Decl. ¶ 5, Ex. C.

The United States argues that it could have required EWEB to pursue its requests from

the Forest Service under the United States Department of Agriculture's *Touhy* regulations but

---

[3] Federal courts have held that when the United States is the named party, requests for production of documents of federal agencies may be made under Rule 34. *See North Dakota v. United States*, No. 19-150, 2021 WL 6278456, at *4 (D. N.D. March 24, 2021) (stating the same in an FTCA context). The United States does not argue that the RFPs were improperly served under Rule 34.

admits "[t]he United States elected not to so require." United States' 2d Resp. 3. The United

States similarly could have made timely objections to requests for production on privilege

grounds. It elected not to. The United States' arguments do not establish good cause justifying its

delay. Defendant United States waived all of its objections to EWEB's first request for

production by failing to object within the time period.

The Court does not reach EWEB's alternative request that the United States produce a

privilege log for the Forest Service responses to EWEB's RFPs because the United States waived

its objections to the RFPs.

### B.    Motion to Compel

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." Fed. R. Civ. P. 26(b)(1). The parties may use interrogatories and requests for

documents to obtain such discovery. Fed. R. Civ. P. 33, 34. When a party fails to make a

disclosure, answer an interrogatory, or produce documents, the other party "may move for an

order compelling an answer, designation, production, or inspection," and "for appropriate

sanctions." Fed. R. Civ. P. 37(a)(3)(A)-(B). If the Court grants the motion, it "must . . . require

the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct,

or both to pay the movant's reasonable expenses incurred in making the motion, including

attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

The court must generally award attorney's fees even where "'the disclosure or requested

discovery is provided after the motion was filed,' even though in such a circumstance, there

would be no order compelling the party to do what it has already done." *Balla*, 677 F.3d at 920

(citation omitted). The court must not award fees if the movant filed the motion without

conferring, the opposing party's objection was substantially justified, or an award would be unjust. Fed. R. Civ. P. 37(a)(5)(A).

The United States has agreed to EWEB's requested depositions and to produce documents responsive to EWEB's RFPs. United States' 2d Resp. 2. The Court reviews whether the United States' refusal to do so prior to EWEB filing this motion was substantially justified.

 1.    <u>Production of Responsive Documents</u>

Unless stipulated or ordered by the Court, Rule 34 requires parties to produce documents or ESI "as they are kept in the usual course of business" in the form requested or in a form "in which it is ordinarily maintained" or "reasonably usable." Fed. R. Civ. P. 34(b)(2)(E).

In this case, the United States responded to EWEB's RFPs by producing "Fire Box" documents which the United States represented contained all Forest Service documents relevant the fire. Monson Decl. ¶ 6, Ex. D. The United States produced these documents on a rolling basis and represented that the Fire Box contained roughly 15,000 documents. Monson Decl. ¶¶ 10, 11. As the United States produced the documents, EWEB reviewed them and informed the United States that they were non-responsive to their RFPs. Monson Decl. ¶¶ 13, 18, 19. For example, the Fire Box contained "hundreds of pages of invoices for hand wipes and hand sanitizer," omitted requested documents, contained duplicates, and "included virtually no emails." Monson Decl. ¶ 19. The United States repeatedly ignored EWEB's requests for status updates on the document production. Monson Decl. ¶¶ 14, 15.

The United States offers no explanation for its production of irrelevant, duplicate, or non-responsive documents. Its failure to produce responsive documents was not substantially justified.

2.     <u>Production of Responsive ESI</u>

On April 18, 2025, the United States represented that the more than 16,000 documents produced constituted "production of all known responsive documents in its possession." Monson Decl. Ex. L 10, Ex. N. On May 30, 2025, when asked why the Fire Box did not contain any emails, the United States disclosed that it had not even searched for responsive emails or ESI in response to EWEB's RFPs. Monson Decl. ¶ 21 Emails and other ESI were squarely within the definition of documents in EWEB's RFPs. Monson Decl. Ex. A 2. Thereafter, the United States searched its ESI for responsive documents according to search terms agreed on by the parties. Monson Decl. Ex. W. The United States performed the search on 1.8 TB data, returning 1.26 TB of data. Monson Decl. Exs. U 2, V 11. Recognizing the scale of the data, counsel for the Adams Plaintiffs offered to provide a 2 TB drive to store the data on July 17th. Monson Decl. Ex. V 9-10 (stating that he had "heard no objections from [his] side of the fence" to provide the drive). On July 30, EWEB asked the United States to produce a hit-list so that the parties could manage the size of the data. Monson Decl. Ex. C. 4-6. The United States then refused to state whether it would review the ESI for responsiveness before production. Monson Decl. ¶ 29. In response to EWEB's Motion to Compel, the Forest Service indicated that it expected to have successfully uploaded all the data by November 25, 2025. Lopez Decl. Supp. United States' Resp. 2d Mot. Compel ¶ 8, ECF 192.

The United States objected to reviewing the data for responsiveness on grounds that it had planned to produce all the data to counsel for the Adams Plaintiffs. Monson Decl. Ex. AA 1-2, ECF No. 182. Parties may stipulate to produce ESI in a certain form and the producing party "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E). The record is insufficient to show a stipulation by the parties that the United States could fulfill its discovery obligations by producing the entire 1.8 TB of data. EWEB

objected to the proposal within two weeks of the offer. EWEB served the RFP. Regardless, the

United States has an obligation to review its production for responsiveness. Courts in the Ninth

Circuit generally do not allow parties to produce a "document dump" of thousands of

unresponsive pages. *See, e.g.*, *Venture Corp. v. Barrett*, No. 13-03384,

2014 WL 5305575, at *1-3 (N.D. Cal. Oct. 16, 2014); *Youngevity Int'l Corp. v. Smith*, No. 16-

00704, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017); *Lexington Luminance LLC v. Feit*

*Elec. Co.*, No. 18-10513, 2020 WL 10052403, at *8 (C.D. Cal. July 8, 2020); *In re Lithium Ion*

*Batteries Antitrust Litig.*, No. 13-02420, 2015 WL 833681, at *3 (N.D. Cal. Feb. 24, 2015). The

United States' position was not substantially justified. The United States is ordered to confer

with the Non-BPA Parties and submit a joint plan to produce responsive ESI within fourteen

days of this Order.

### 3.    Forest Service Depositions

EWEB also sought to compel depositions of three Forest Service employees: Agent

McIntrye, Dan Osborne, and Dirk Rogers. Eight days after successfully seeking a court order

protecting it from the depositions while the Court considered the instant motion, the United

States stated that it will allow the depositions to go forward. Mot. Protective Order, ECF No.

187; Order, ECF No. 190; United States Resp. 2d Mot. 6. The United States previously objected

to the depositions on grounds that EWEB had not served formal notices for those employees.

Monson Decl. Ex. AA 1-2. EWEB did not serve the United States as a professional courtesy

until the United States could make the witnesses available, and the United States indicated it was

seeking the witness's availability. Monson Decl. ¶ 40. EWEB served deposition notices to the

three employees on October 14, 2025. Monson Decl. Exs. FF, GG, HH. On October 28, 2025,

the United States stated that, although it would have allowed the depositions of the employees

two months ago, it might not. Monson Decl. ¶ 39.  The United States offered no reasonable

justification for its reversal. Monson Decl. ¶ 39.

Whatever inference is to be drawn from the United States' comments and reversals on its

willingness to proceed with the depositions, its refusal to allow the depositions to move forward

was not substantially justified. The Court orders the United States to make the witnesses

available within thirty days of this Order. The Non-BPA Parties may recall those witnesses for

further testimony based on documents produced after this Court's order.

### C.    Awarding Costs and Fees

Under Rule 37(a)(5), EWEB and the other Non-BPA Parties are entitled to their costs and

fees associated with preparing EWEB's Motion to Compel and for sanctions because the United

States' objections to the requests were not substantially justified.

The Court further finds that the United States acted in bad faith with respect to the Forest

Service discovery in this case by failing to produce timely and responsive productions to

EWEB's document requests and make Forest Service employees available for deposition. To the

extent the United States has not yet fulfilled its obligations,[4] The United States is ordered to

produce all non-ESI documents responsive to EWEB's RFPs within 45 days of this order, confer

with the Non-BPA Parties and submit a proposed plan to produce responsive ESI within fourteen

days of this Order, and make the Forest Service employees available for deposition within 30

days of this Court's order.

---

[4] The Court has not been made aware of the United States' production of the sought discovery at
the time of this Opinion.

**CONCLUSION**

For the reasons discussed above, The Non-BPA Parties' Motion to Compel and for

Sanctions (ECF No. 168) is GRANTED IN PART. The United States is ordered to produce a

witness for a 30(b)(6) deposition on the topics noticed to its first designee, to pay the Non-BPA

Parties' costs and attorney's fees associated with the 30(b)(6) deposition, the forthcoming

30(b)(6) deposition ordered above, and a reasonable amount of attorney's fees associated with

obtaining the granted relief. Inferences from the destroyed evidence will be drawn against the

United States. EWEB's Motion to Compel and for Sanctions (ECF No. 181) is GRANTED.

DATED this 26th day of February 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge